UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    JOSEPH C. BOWEN,                         Case No. 08-31661-dof
                                                  Chapter 7 Proceeding
               Debtor.                             Hon. Daniel S. Opperman
_____/

DAVID SMITH
d/b/a TRIPLE S CONSTRUCTION,

       Plaintiff,

v.                                                             Adversary Proceeding
                                                              Case No. 08-3123-dof

JOSEPH C. BOWEN,

       Defendant.
_____/

<u>Trial Opinion</u>

The Court conducted a trial in this matter on July 14, 2009. After conclusion of the trial, the Court took this matter under advisement.

<u>Findings of Fact</u>

The Debtor, Joseph Bowen, purchased the land and house located at 3096 South Irish Road, Davison, Michigan on November 4, 2005. To do so, the Debtor obtained two mortgages from Wilshire Credit Corporation ("Wilshire") totaling $150,000. In March, 2006, a fire destroyed the Debtor's residence. Fortunately, the Debtor had his house insured with Pioneer State Mutual Custom Claim Service ("Pioneer"). Pioneer hired William Comstock to adjust the Debtor's fire loss. Subsequently, Pioneer issued a check to the Debtor for his personal property loss and then issued two checks totaling $98,000 payable to the Debtor and Wilshire. The Debtor endorsed these checks,

1

and tendered the checks to Wilshire. Wilshire held these monies in escrow pending the Debtor rebuilding his home.

To that end, the Debtor hired the Plaintiff, David Smith d/b/a Triple S Construction, to build a new residence. Mr. Smith testified that he was aware that there was $98,000 held by Wilshire, and was told by the Debtor that when the Debtor received monies from Wilshire, the Plaintiff would be paid for the construction of the Debtor's new home.

On June 20, 2006, the Debtor paid $20,000 to the Plaintiff as a down payment for the materials needed to begin construction of the home. On that day, the Plaintiff met with the Debtor, and then went with the Debtor to the Debtor's credit union to receive the $20,000 check. The Debtor testified that he had received $37,000 from Wilshire a few days prior to June 20, 2006, and thought he needed to have the Plaintiff endorse this check in order to deposit into the Debtor's account. When the Debtor and the Plaintiff arrived at the credit union, however, the Debtor found out that only one endorsement was necessary, so he deposited the $37,000 check in his account, and wrote a $20,000 check payable to the Plaintiff. Plaintiff began construction on the home and inquired from time to time regarding the status of monies received by the Debtor from Wilshire. As the Plaintiff understood, Wilshire would send someone to inspect the progress made in regard to construction, and then issue a check consistent with the progress with a hold to insure compliance with the remaining portion of the contract. The Debtor received a check from Wilshire in the amount of $12,250 in August, 2006, (Plaintiff's Exhibit 2), and deposited that check into his account. Per Debtor's testimony, he used the money from this check to make improvements on some investment property in Lansing, Michigan, and did not tender the $12,250 to the Plaintiff, contrary to his agreement to do so. By October, 2006, the Plaintiff sensed that Defendant would be

2

unable to pay for the construction of the new house. Accordingly, the Plaintiff discontinued the project, but continued to demand payment for the services rendered. Per Defendant's Exhibit A, the amount owed by Defendant to Plaintiff as of October 26, 2006, was $93,800, which included the completion of the framing of the house and plumbing in the house, as well as a 95% completion rate for the rough electrical and mechanical portions of the house.

Plaintiff continued to demand payment from Defendant, and was told by the Defendant that Wilshire had not made payments to the Defendant. In March, 2007, however, Wilshire tendered $24,000 to Defendant, and thereafter tendered an additional $12,250 to Defendant. Defendant testified that he used the $24,000 to invest in another home in Lansing, Michigan, and spent the $12,250 for siding on his home in Davison.

The parties signed an agreement dated November 30, 2007, in which the Defendant agreed to pay Plaintiff $98,800. The payment was to come from money in escrow of approximately $67,000, together with a post-dated check for the remaining balance of $31,800. Per Plaintiff's Exhibit 4, the Defendant tendered a check in the amount of $35,000 dated December 20, 2007, that remains uncashed. The November 30, 2007, agreement required the Plaintiff to issue a conditional release of the mechanic's lien, but allowed Plaintiff to reinstate the lien if he was not paid within 35 days of the date of signing the agreement. The Defendant admitted at the July 14, 2009, trial that $67,000 was not held in escrow as of November 30, 2007, and that the amount instead was $12,250.

Plaintiff was not paid pursuant to the November 30, 2007, agreement, and ultimately obtained approval from Defendant to access information from Wilshire (Plaintiff's Exhibit 6). Plaintiff did exactly that, and learned for the first time that the balance in the Wilshire escrow account was $12,250. Plaintiff filed additional documents regarding the lien. Defendant thereafter filed his Chapter 7 petition with this Court on April 23, 2008.

3

## Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

## Applicable Statute

11 U.S.C. § 523(a)(2)(A), (4), and (6) state:

>  (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
>
> . . . .
>
>  (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
>  (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> . . . .
>
>  (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>
> . . . .
>
>  (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

## Analysis

### 11 U.S.C. § 523(a)(2)

"Section 523(a)(2)(A) is phrased in the disjunctive. It describes three types of conduct engaged in by a debtor that can give rise to a non-dischargeable debt: (1) false pretenses; (2) a false representation; and (3) actual fraud." *Morganroth & Morganroth PLLC, et al., v. Stollman*, (*In re Stollman*), 404 B.R. 244, 257 (Bankr. E.D. Mich. 2009) (Shefferly, J.). "False representations and pretenses encompass statements that falsely purport to depict current or past facts." *Haney v.*

4

*Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (*quoting Peoples Sec. Fin. Co., Inc., v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)). "'[F]alse pretense' involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *Copeland*, 291 B.R. at 76 (quoting *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 148 (Bankr. M.D. Ga. 2002) (quoting *Sears Roebuck & Co. v. Faulk (In re Faulk)*, 69 B.R. 743, 750 (Bankr. N.D. Ind. 1986)).

To prevail under Section 523(a)(2)(A) based on a false representation theory, a plaintiff must establish the following elements by a preponderance of the evidence:

(1) the debtor obtained money[, property, services, or credit];

(2) through a material misrepresentation;

(3) that, at the time, the debtor knew was false or made with gross recklessness as to its truth;

(4) the debtor intended to deceive the creditor;

(5) the creditor justifiably relies on the false representation; and

(6) its reliance was the proximate cause of loss.

*In re Stollman*, 404 B.R. at 258 (quoting *Rembert v. AT & T Universal Card Services, Inc.* (*In re Rembert*), 141 F.3d 277, 280-81 (6th Cir. 1998)).

Applied to this case, the Court must focus on the statements made by the Defendant to the Plaintiff and the actions of the Plaintiff in reliance of those statements. While the Court finds that the Defendant misstated the facts to Plaintiff on a number of occasions, the Plaintiff did not rely on all of the statements made by the Defendant before providing goods and services. Most notably, the Plaintiff discontinued work on Defendant's home in late-October, 2006, approximately 6 to 9 months before Wilshire tendered the third and fourth checks to the Plaintiff. The Plaintiff failed to prove reliance on any statements made by Defendant in regard to those two checks resulting from

5

the original May, 2006, construction agreement between Plaintiff and Defendant.

The same is not true in regard to the first and second checks, however. After listening to the testimony of the Defendant, the Court concludes that the Defendant did indeed tender $20,000 to the Plaintiff, and that the proceeds of this payment came from the $37,000 check tendered by Wilshire to the Plaintiff. Wilshire, who is the mortgage holder on the property, clearly wanted to avoid additional liens on the property, and sought to protect its interest by requiring inspections and progress payments to be made. Defendant correctly argues that a promise or statement of future performance cannot constitute fraud, so statements regarding future payments made by Wilshire to Defendant, standing alone, cannot operate to form the basis of Plaintiff's actions.

The record before the Court, however, clearly supports Plaintiff's contention that he relied upon continued statements by the Defendant in regard to the second payment received by the Defendant from Wilshire. This payment was made before Plaintiff left the work site and, therefore, should have been paid to the Plaintiff. Unlike subsequent payments, the Plaintiff relied upon statements of the Defendant with regard to the second $12,250 payment to not only perform, but to also receive payment from Wilshire for that performance. The Court concludes that the Plaintiff's action regarding the second check is valid in that the Plaintiff relied upon statements of Defendant, as witnessed by the continued building of Defendant's house by Plaintiff. When coupled with the $17,000 taken by Defendant from the first check, Plaintiff is entitled to a judgment in the amount of $29,250.

<u>11 U.S.C. § 523(a)(4)</u>

The record before the Court is completely devoid of evidence of any relationship that establishes a Section 523(a)(4) duty. In particular, there is no evidence before the Court that imposes a fiduciary duty upon the Defendant and in favor of the Plaintiff. *See In re Stollman*, 404

6

08-03123-dof    Doc 58    Filed 09/28/09    Entered 09/28/09 10:11:48    Page 6 of 9

B.R. 244 (Bankr. E.D. Mich. 2009). While the Court acknowledges that the parties were in a contractual relationship, there is nothing in the record to indicate that that contractual relationship created any fiduciary duty over and above the typical builder/owner relationship commonly found in any residential construction setting. Notably, courts have consistently held that, absent an express or technical trust relationship, which would have here required that the Debtor held funds in trust for a third party, here, the Plaintiff, the relationship amounts to nothing more than contractual in nature, which is dischargeable under Section 523(a)(4). *See R.E. American, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997). Accordingly, Plaintiff's claims based upon 11 U.S.C. § 523(a)(4) are denied as failing to state any cause of action.

<u>11 U.S.C. § 523(a)(6)</u>

It appeared that Plaintiff argued that the proceeds held by Wilshire in escrow were those of Plaintiff, and not Defendant. In support of this argument, Plaintiff offered the testimony of Mr. Comstock, who testified that the creation of checks by Wilshire that included both Plaintiff's and Defendant's name indicated an intent that showed that these monies were Plaintiff's, and not Defendant's. The record before this Court indicates that the checks included both Plaintiff's and Defendant's names, but that there is no further evidence that Wilshire intended these proceeds to be Plaintiff's, and not Defendant's. As correctly pointed out by Defendant, the lack of the inclusion of the word "and" allowed either party to negotiate the checks in question. The issue of negotiation, however, does not completely address the issue of whether the checks were Defendant's or Plaintiff's.

Instead, the Court has reviewed the record and notes that at no time did Wilshire require Plaintiff to provide any sworn statements or releases of lien. Plaintiff did not testify or indicate that he signed any such documents, so the record is devoid of any proof that Wilshire intended the

7

08-03123-dof    Doc 58    Filed 09/28/09    Entered 09/28/09 10:11:48    Page 7 of 9

checks in question to pay for either the release of a property right in the form of a release of lien, or payment to satisfy that property right. In regard to the checks issued by Wilshire, therefore, the Court holds that the formation of the checks, with the notation of payees, alone does not create a property right subsequently converted by Defendant.

The Court also considered whether the misstatements by the Defendant in the November 30, 2007, agreement constituted conversion of a property right of the Plaintiff. In particular, it is clear that by November, 2007, Plaintiff had placed liens on Defendant's property. The copies of these liens that were attached to pleadings filed with this Court indicate, however, that the liens were not in the proper and necessary form as required by Michigan statute. From a close review of the form of the liens filed by the Plaintiff, it is clear that any action to foreclose these liens would have been dismissed by a state court as failing to comply with the statutorily mandated forms. Specifically, the claim of lien form appears not to comply with M.C.L. § 570.1111, which specifies that a claim of lien must be in substantially the form as stated in the statute. However, even if the claims of lien Plaintiff prepared and recorded do substantially comply with the statute, the Court notes that the second claim of lien was dated and recorded post-petition, on June 11, 2008. Thus, the June 11, 2008, claim of lien is void or voidable as violative of the automatic stay. As to the claim of lien dated and recorded on January 5, 2007, the Court concludes that the November 2007, agreement between the parties would supersede such, and because Plaintiff did not sue Defendant to foreclose on the January 5, 2007, claim of lien within one year as M.C.L. § 570.1117(1) requires, the first claim of lien is invalid for that reason as well. Defendant, therefore, did not convert any property right of the Plaintiff because Plaintiff did not have a property right recognized by state law.

8

08-03123-dof    Doc 58    Filed 09/28/09    Entered 09/28/09 10:11:48    Page 8 of 9

## Conclusion

The Court concludes that $29,250 owed by Defendant to Plaintiff is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2). Plaintiff's remaining claims are dismissed for failure to state a cause of action. The Court further awards Plaintiff court costs of $250.00, the filing fee for commencement of this adversary proceeding. The Court has entered a Judgment consistent with this Opinion.

cc:    David Smith, Triple S Construction

**Signed on September 28, 2009**

                                        **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**